1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTHWEST ADMINISTRATORS INC,<br><br>     Plaintiff,<br><br> v.<br><br>PACIFIC SHIP REPAIR & FABRICATION INC,<br><br>     Defendant. | CASE NO. C23-0645-KKE<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT |

This matter comes before the Court on Plaintiff Northwest Administrators Inc.'s ("Northwest") motion for default judgment against Defendant Pacific Ship Repair & Fabrication ("Pacific Ship"). Dkt. No. 14. For the reasons provided below, the Court grants in part and denies in part the motion.

## I. BACKGROUND

Northwest is the "authorized administrative agent for and assignee of" the Washington Teamsters Welfare Trust Fund ("Washington Teamsters Trust") and the Retiree's Welfare Trust Fund ("Retiree's Trust").[1] Dkt. No. 14 ¶ 2. On May 3, 2023, Northwest filed this case alleging Pacific Ship had failed to pay required contributions to each of the Trusts under a collective bargaining agreement with Local 174 of the International Brotherhood of Teamsters ("Local 174").

---

[1] This order refers to these two trusts collectively as "Trusts."

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT - 1

Dkt. No. 1.    Northwest sought judgment for delinquent contributions, liquidated damages, prejudgment interest, attorney's fees, and a monthly accounting from January 2023 to "the date of service of this Complaint."[2]  *Id.* at 3–4.

On May 22, 2023, Pacific Ship was personally served with the complaint and summons. Dkt. Nos. 5, 9-1.  On October 5, 2023, Northwest moved for entry of default against Pacific Ship, which was granted.  Dkt. Nos. 9, 10.  On February 13, 2024, Northwest filed this motion under Federal Rule of Civil Procedure 55(b), seeking default judgment against Pacific Ship for $4,385.73.  Dkt. No. 14.  In support of its motion, Northwest filed declarations[3] and exhibits to show that Pacific Ship agreed to each Trust's Agreement and Declaration of Trust ("Agreement"); that Pacific Ship was notified of its delinquent payments to each Trust; and providing remittance reports, timekeeping records, and spreadsheets calculating the appropriate judgment amount.  Dkt. Nos. 14–15-7.

## II.    ANALYSIS

### A.    Jurisdiction

Before entering default judgment, the Court must confirm that it has both subject matter and personal jurisdiction.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

This Court has subject matter jurisdiction under the Employee Retirement Income Security Act ("ERISA") and the Taft-Harley Act.  Dkt. No. 1 ¶ 4.

---

[2] Northwest's motion for default judgment does not seek an order regarding the request for monthly accounting.  *See* Dkt. No. 14-1.

[3] The Declaration of John Mowry ("Mowry Declaration") incorrectly refers to its Exhibits D & E.  Dkt. No. 15 ¶¶ 13, 14.  The document Mowry refers to as Exhibit D is, in fact, Exhibit F.  The document Mowry refers to as Exhibit E is, in fact, Exhibit G.  For clarity, the Court refers to all documents by their docket numbers.

The Court has personal jurisdiction over Pacific Ship, whose registered agent for Washington was properly served with this complaint.  Dkt. No. 9-1; *see* WASH. REV. CODE § 23.95.450(1); *see also id.* § 4.28.080(9) (permitting service of summons on a company's registered agent).

**B.    Legal Standard**

A court's decision to enter a default judgment is discretionary.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Default judgment is "ordinarily disfavored[,]" because courts prefer to decide "[c]ases on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment).  At the default judgment stage, the court takes "the well-pleaded factual allegations" in the complaint "as true[,]" but "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). When considering whether to exercise discretion in entering a default judgment, courts may consider various factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.  "The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important *Eitel* factors."  *Fed. Nat. Mortg. Ass'n v. George*, No. EDCV 14-01679-VAP (SPx), 2015 WL 4127958, at *3 (C.D. Cal. July 7, 2015).  This district also requires a party seeking default judgment to provide "a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought."  Local Rules W.D. Wash. LCR 55(b)(2).  Moreover, "[i]f the claim is based on a contract,

plaintiff shall provide the court with a copy of the contract and cite the relevant provisions." LCR 55(b)(2)(A).

**C.      Northwest Is Entitled to Default Judgment.**

As detailed below, the Court has considered each of the *Eitel* factors and concludes that Northwest is entitled to default judgment.

The first factor, prejudice to Northwest, favors granting default judgment because Northwest (and the Trusts and covered employees) will be prejudiced by not receiving the bargained-for benefits.

"The second and third *Eitel* factors—the substantive merits of the claim and the sufficiency of the complaint—are often analyzed together." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014). Northwest's complaint alleges a simple fact pattern—Pacific Ship agreed to a collective bargaining agreement with Local 174 and agreed to each Trust's Agreement, in which Pacific Ship agreed to pay certain amounts to each Trust and certain liquidated damages, interest, and fees upon any delinquent payments. Dkt. No. 1 at 2–3. Through the Affidavit of Russell Reid ("Reid Affidavit"), Mowry Declaration, and attached contracts, Northwest proves that Pacific Ship entered the collective bargaining agreement (Dkt. No. 14 ¶ 8, Dkt. No. 15-1 at 4–33) and agreed to both Trust's Agreements (Dkt. No. 14 ¶ 9, Dkt. No. 15-1 at 3),[4] which allow for liquidated damages of 20% for any delinquent contributions, interest on the delinquent contributions, and reimbursement for any costs and attorney's fees incurred in collection efforts (Dkt. No. 15-2 at 10, Dkt. No. 15-3 at 15). The Reid Affidavit and financial records evidence that Pacific Ship was delinquent on various contributions to the Trusts. Dkt. No.

---

[4] Unlike its agreement to the Retiree's Welfare Trust Agreement (Dkt. No. 15-1 at 3), Northwest does not provide separate documentary evidence of Pacific Ship's agreement to the Washington Teamsters Trust Agreement. Even so, an attorney affidavit and evidence of remittance reports for the Washington Teamster's Trust and Pacific Ship (Dkt. No. 15-6) are sufficient evidence of agreement.

14 ¶ 13, Dkt. No. 15-6. Northwest has stated, and supported, its claim for judgment against Pacific Ship.

The fourth factor, the sum of money at stake, favors entering default judgment because the amount at issue is a few thousand dollars, which is proportional to the harm and seriousness of Pacific Ship's failure to timely contribute to the Trusts. *See Illumination Arts*, 33 F. Supp. 3d at 1212 (stating that this factor accounts for "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether the recovery sought is proportional to the harm caused by defendant's conduct" (cleaned up)).

The fifth factor, the possibility of dispute over material facts, favors entering default judgment. Generally, after default has been entered, "courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations are true." *Id.* But this is true only when the plaintiff has "supported its claims with ample evidence[.]" *Id.* (quoting *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010)). As described above, Northwest has supported its allegations with documents and declarations.

The sixth factor, whether default is due to excusable neglect, favors entering default judgment because Pacific Ship has been served with the complaint (Dkt. Nos. 5, 9-1) but has not entered an appearance or participated in this action.

The seventh factor, the policy underlying the Federal Rules of Civil Procedure, weighs against entering default judgment because the Federal Rules of Civil Procedure favor resolution of claims through contested litigation.

On balance, the Court concludes the *Eitel* factors favor granting default judgment.

1

**D.      Northwest Provides Sufficient Evidence of Damages, Except Its Request for Interest.**

2

Once a court determines default judgment is proper, it then ensures "the amount of damages

3

is reasonable and demonstrated by the evidence." *Illumination Arts*, 33 F. Supp. 3d at 1211.

4

Northwest must provide "a concise explanation of how all amounts were calculated, and shall

5

support this explanation with evidence establishing the entitlement to and amount of the principal

6

claim, and, if applicable, any liquidated damages, interest, attorney's fees, or other amounts

7

sought." LCR 55(b)(2)(A).

8

Northwest seeks $2,969.74 in liquidated damages. Dkt. No. 14-1. Northwest has provided

9

remittance reports showing the contributions owed by the Washington Teamsters Trust (Dkt. No.

10

15-6),[5] the Agreements supporting 20% liquidated damages for late contributions (Dkt. Nos. 15-

11

2, 15-3), and the dates the late payments were received (Dkt. No. 15-6). The Court has confirmed

12

the liquidated damages for each late monthly contribution equal 20% of the contribution amount

13

and that, combined, these damages total $3,116.15[6] for January 2023 through September 2023.

14

The spreadsheet acknowledges two payments on these liquidated damages, bringing the total to

15

$2,969.74. Dkt. No. 15-7. There is sufficient evidence to support this amount of liquidated

16

damages.

17

Northwest seeks $194.76 in interest through February 9, 2024. Dkt. Nos. 14-1, 15-7.

18

Northwest cites only the Trusts' Agreements to support this request. Dkt. No. 14 ¶ 10 (citing to

19

Dkt. Nos. 15-2, 15-3). But the Agreements state that "the delinquent contribution shall bear

20

interest … from the date on which the employer contributions became due and payable until the

21

date the employer contributions are paid to the Trust Fund." Dkt. No. 15-3 at 15, *see also* Dkt.

22

23

[5] While the remittance reports are titled "Washington Teamsters Welfare Trust" (Dkt. No. 15-6), it appears the reports encompass amounts due to both Trusts. *See* Dkt. No. 15-7 (showing contribution amount broken down by "WTWT" and "RWT").

24

[6] It is unclear why Northwest's total is $3,116.16. *See* Dkt. No. 15-7 at 3, Dkt. No. 14 ¶ 13.

No. 15-2 at 10.  Thus, interest should not have accrued after December 4, 2023, the date of the last payment on outstanding contributions.  Dkt. No. 15-6 at 18.   Yet the Reid Affidavit states, "Defendant is obligated to the Trust for … interest (through 2/9/24) in the amount of $204.85, less payment of $10.09, leaving a balance due for interest in the amount of $194.76 for its delinquently paid contributions for the period January 2023 through September 2023." Dkt. No. 14 ¶ 13.  Under the Agreements cited by Northwest, calculations of interest should not reference February 2024.  Because of the inconsistent evidence, Northwest has not shown it is entitled to the $194.76 in interest in seeks.[7]

Northwest seeks $975.23 in attorney's fees. Dkt. No. 14-1.  Northwest has provided contemporaneous billing records (Dkt. No. 14-4), the Agreements in which Pacific Ship agreed to reimburse any attorney's fees incurred in collected delinquent payments (Dkt. Nos. 15-2, 15-3), and a spreadsheet showing two payments towards this total (Dkt. No. 15-7).  There is sufficient evidence to support a judgment for $975.23 in attorney's fees.

Northwest seeks $246.00 in costs. Dkt. No. 14-1.  Northwest has provided billing records evidencing the costs incurred in bringing this case (Dkt. No. 14-4), the Agreements in which Pacific Ship agreed to reimburse any costs incurred in collecting delinquent payments (Dkt. Nos. 15-2, 15-3), and a spreadsheet showing two payments towards this total (Dkt. No. 15-7).  There is sufficient evidence to support a judgment for $246.00 in costs.

In sum, Northwest provides sufficient evidence of $2,969.74 in liquidated damages, $975.23 in attorney's fees, and $246.00 in costs.

---

[7] If there is other authority to support an award of interest through February 2024, Northwest has not provided it.  This court's local rules require plaintiffs to "state the [interest] rate and the reasons for applying it" if it differs from the rate provided by 28 U.S.C. § 1961.  LCR 55(b)(2)(B).

1

## III.   CONCLUSION

2

For these reasons, the Court GRANTS IN PART and DENIES IN PART Northwest's

3

motion for default judgment.  Dkt. No. 14.  Northwest's motion is denied as to its request for

4

judgment for $194.76 in interest, but granted as to the remaining requests.  The Court will enter

5

default judgment for $3,917.97, as detailed within.  Post-judgment interest shall accrue on this

6

judgment pursuant to 28 U.S.C. § 1961(a).

7

Dated this 29th day of April, 2024.

8

9

10

Kymberly K. Evanson
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT - 8